# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6025 | **DATE** | 11/8/2001 |
| **CASE TITLE** | Barbara Christman vs. Brauvin Realty Advisors | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Class counsel's applications for fees and costs are granted in part and denied part. The Mills Firm is awarded $523,882.08 in fees and $74,370.76 in costs. Futterman & Howard is awarded $106,625.10 in fees and $3,585.92 in costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | **number of notices** 7 |
| ✓ | Notices mailed by judge's staff. | NOV 9 2001 |
| | Notified counsel by telephone. | **date docketed** |
| | Docketing to mail notices. | *eaw* docketing deputy initials |
| | Mail AO 450 form. | 11/8/01 date mailed notice |
| | Copy to judge/magistrate judge. | |

**Document Number**
672

AC6 courtroom deputy's initials

01 NOV -8 AM 11: 03

Date/time received in central Clerk's Office

78/secy
mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NOV - 2001

BARBARA CHRISTMAN, JANET M. )
TOOLSON, JOHN ARCHBOLD, and )
BEN O. CARROLL, on behalf of )
themselves and all others )
similarly situated, )
       )
      Plaintiffs, )
       ) Case No. 96-C-6025 JGB
    v. ) Judge Joan B. Gottschall
       )
BRAUVIN REALTY ADVISORS, INC., )
BRAUVIN REALTY ADVISORS, II, Inc. ,) Magistrate Judge
Corporate General Partners; ) Arlander Keys
Jerome J. Brault; )
Brauvin Real Estate Funds, LLC, )
       )
       )
      Defendants, )
       )
    and )
       )
BRAUVIN HIGH YIELD FUND L.P.; )
BRAUVIN HIGH YIELD FUND LP II, )
BRAUVIN INCOME PLUS LP III, )
BRAUVIN CORPORATE LEASE PROGRAM )
IV LP, )
       )
      Nominal Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Applications
for Fees and Costs. Pursuant to Judge Gottschall's March 30,
2001 order detailing recoverable fees and costs, Plaintiffs'
Applications detail their fees and costs associated with five
aspects of this class action litigation that actually benefitted
class members. Plaintiffs have also submitted their fees and

672

costs for time spent on "normal litigation tasks" that, Plaintiffs contend, are within the spirit of Judge Gottschall's order. For the reasons set forth below, Plaintiffs' Applications are granted in part and denied in part.

## BACKGROUND FACTS

On March 30, 2001, Judge Gottschall issued an order setting forth the procedural and factual background of this case in detail, and this Court will not repeat that information here. Instead the Court will present only those facts relevant to the Plaintiffs' Applications.

On September 18, 1996, certain limited partners in a real estate venture brought a class action lawsuit against the general partners. Plaintiffs alleged that the general partners were conspiring to transfer partnership assets at a grossly inadequate price in a self-dealing transaction that violated the partnership agreement. The transaction proposed by the general partners would have sold the partnership's assets for approximately $86,000,000.

During the course of litigation, Plaintiffs achieved victories on certain contract-based issues, such as requiring the general partners to turn over the lists of all of the limited partners' names and addresses, preventing the general partners from paying for their defense with partnership funds, requiring the general partners to resume dividend distributions to the

limited partners, and forcing the general partners to abide by the proxy procedures outlined in the partnership agreement and under Delaware law. In addition, Plaintiffs successfully defended a challenge from other limited partners, referred to as the Individual Plaintiffs, who sought to replace Plaintiffs as representatives of the class.

Nevertheless, Plaintiffs did not succeed in achieving a more adequate price for the partnership assets. Although Plaintiffs failed to obtain an injunction preventing the general partners from transferring the partnership assets, ultimately, the general partners could not obtain the necessary financing to complete the challenged transaction.[1] Finally, the partnership's assets were sold under the guidance of a special master for $63,775,645.00; approximately $23,000,000 less than the sale price under the proposal that gave rise to the suit.

This $23,000,000 shortfall was not lost on the court. In response to Plaintiffs' Applications, Judge Gottschall conceded that class counsel had achieved narrow victories, and that counsel represented the class in a professional manner. However, Judge Gottschall took class counsel to task for failing to properly investigate the market realities of this case; clearly, the court found, class counsel filed this suit without evidence

---

[1] Judge Gottschall noted that the pending litigation may have interfered with the general partners' ability to close the challenged transaction.

that the $86,015,000 sale price was "grossly inadequate" or otherwise injurious to the limited partners. The court found that the litigation was ill-advised from the start.

Judge Gottschall rejected class counsel's claim that the settlement had achieved the "principle goal of the litigation," ruling instead that the litigation failed to confer any significant benefit upon the class. The court explained that, with the exception of the relatively quick and decisive victory in obtaining the partnership lists, class counsel failed to convince the court that filing the lawsuit was in the best interest of the limited partners.

Accordingly, the court permitted class counsel to recover only a narrow, well-defined category of fees and expenses. The court ruled that class counsel was entitled to fees and expenses "only for those aspects of this litigation that actually benefitted the class." Specifically, the court found that Plaintiffs successfully established that: 1) the general partners wrongfully withheld lists containing the names and addresses of the other limited partners, to which Plaintiffs were entitled under the partnership agreements; 2) the general partners improperly advanced partnership funds to pay for their defense; 3) the general partners utilized an unauthorized and improper proxy solicitation procedure to obtain the limited partners' approval of the proposed transaction; 4) Plaintiffs, and not the

4

challenging Individual Plaintiffs, were the appropriate class representatives; and 5)the general partners improperly withheld the distribution of dividends, forcing the general partners to resume the distribution. [2]

In short, Judge Gottschall concluded that the primary purpose of the lawsuit was to prevent the general partners from selling the partnership's assets at a below-market price. Because Plaintiffs lost on the substantive merits of the proposed transaction, Plaintiffs' counsel were not entitled to fees or expenses arising from work on the substantive merits of the case.

Judge Gottschall then ordered Plaintiffs' counsel to submit applications in accordance with this Order, and subsequently referred the matter to this Court. The Court must now determine whether and to what extent Plaintiffs' Applications comply with Judge Gottschall's March 30, 2001 Order.

### STANDARDS

Prevailing parties seeking to recover attorneys' fees bear the burden of substantiating the hours worked and the rate claimed.[3] *Hensley v. Eckerhart*, 461 U.S 424, 433 (1983). While

---

[2] Judge Gottschall noted that "successes" 2 and 4 above only benefitted the limited partners in the context of litigation, and were, therefore, of dubious benefit. Absent litigation, the general partners would not have advanced partnership funds to pay for their defense, and there would not have been a dispute as to the appropriate class representative.

[3] In her opinion, Judge Gottschall determined that the lodestar method was the appropriate method for awarding fees.

5

attorneys are "not required to record in great detail how each minute of his time was expended . . . counsel should identify the general subject matter of his time expenditures." *Id.* at 436-37 n. 12.

When "a fee petition is vague or inadequately documented," the Court "may either strike . . . problematic entries or . . . reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *see also Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985)(upholding district court's decision to reduce vague fee entries by 15%.)

## DISCUSSION

Class counsel was comprised of three different law firms, each seeking an award of fees and costs: The Mills Law Firm ("Mills"); Futterman & Howard, Chtd. ("Futterman"); and Larry D. Drury, Ltd. Because Defendants and Larry D. Drury, Ltd. reached an agreement on adequate compensation prior to the issuance of this Order, the Court focuses only on the Applications filed by the Mills and Futterman firms.

Before addressing the Applications' individual entries for professional services and expenses, the Court will first resolve

---

Under the lodestar method, the fee award is calculated by multiplying the reasonable hours worked by a reasonable rate. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995).

the parties' primary conflict regarding the proper interpretation of Judge Gottschall's March 30, 2001 Order.  Not surprisingly, the petitioning law firms argue for a broad interpretation of Judge Gottschall's Order, claiming, essentially, that Judge Gottschall intended to exclude only those fees and expenses directly related to the substantive merits of the case.  As such, the petitioning law firms claim entitlement to fees and expenses for "the ligaments that hold the litigation together and without which the case could not proceed," including services such as pre-filing investigation, researching jurisdictional issues, and drafting and amending complaints.

Also not surprisingly, Defendants offer a far narrower interpretation of Judge Gottschall's Order.  Relying heavily upon Judge Gottschall's repeated admonishments to class counsel that the lawsuit was "ill-advised" and resulted in no real benefit to the class, Defendants contend that Judge Gottschall's Order permits the petitioning firms to collect fees and expenses only for services directly related to the permitted categories, and nothing more.

The Court agrees with Defendants.  Judge Gottschall's Order expresses the court's frustration with Plaintiffs' decision to file this suit, noting that many of the benefits conferred on the class were illusory, in that they did not enhance the valuation of the limited partners' holdings.  The court suggested that the

more prudent course of action would have been to allow the proposed transaction to proceed, and then subsequently sue the general partners in the event that the limited partners actually suffered any damages arising from the transaction. Given Judge Gottschall's findings, this Court cannot find that Judge Gottschall intended to compensate class counsel for time spent on the "normal incidents of litigation." Rather, the Court finds that the general litigation fees and expenses are beyond the scope of the recoverable costs permitted by Judge Gottschall's Order.

Having determined that the general litigation fees are not recoverable, the Court now turns to the petitioning firms' individual Applications.

## THE MILLS FIRM

Mills' Application divides the firm's fees into the five categorizes permitted by Judge Gottschall, and includes a sixth category for general litigation fees and costs, which this Court has determined is beyond the scope of Judge Gottschall's Order. Defendants have not filed specific objections to any of Mills' itemized fees or costs, relying instead upon the Court to protect their interests.

Within each of the permitted categories, the Court has analyzed whether the requested fees are compensable and, if so, to what extent. A few general comments are appropriate.

Notably, although Mills purports to divide its Application into specific categories, each of the specific categories includes entries that, the Court believes, incorporate time for general litigation services. This problem is compounded by the fact that the Application improperly lumps together multiple tasks -- some clearly recoverable, others not -- within a single block of time. Other entries are simply too vague or generalized to permit the Court to determine whether they are recoverable under Judge Gottschall's Order. Therefore, the Court has reduced the fees corresponding to such entries by 15%.

Judge Gottschall has previously ruled that Mills' hourly rate is consistent with rates in the relevant market. This Court further finds that the time devoted to the various permitted tasks was not so excessive as to warrant a reduction. The Court will discuss each category in turn.

**1. Efforts To Obtain Partnership Lists**

A. The following entries and corresponding fees are fully recoverable: work performed by RWM and LSL on 8/30/96 ($1,652.50); by RWM on 9/5/96 ($945.00); by RWM, RSK, and LSL on 9/9/96 ($2,165.00); by RWM and LSL on 9/10/96 ($670.00); by RSK on 9/13/96 ($1,750.00); by RSK on 9/15/96 ($2,625.00); by LSL on 9/16/96 ($ 562.60); by RWM, RSK, and LSL on 9/17/96 ($3,790); by RWM on 9/18/86 ($840.00); by LSL on 9/18/96 ($562.50); by RSK,

9

LSL, and RWM on 9/19/96 ($9,842.50); and RSK, LSL, and RWM on 9/20/96 ($10,707.50).

**SECTION 1a TOTAL:    $36,112.60**

B.   The following entries are vague, contain inadequate information to justify a full award, and/or improperly lump together multiple services.  Most of the entries in this category intermingle general litigation services -- such as drafting the initial Complaint -- with specific services directly related to obtaining the partnership lists.  Therefore, these services are not fully recoverable.  Because the Application does not properly segregate time for these tasks, the Court reduces these requested fees by 15%.  The amount in parenthesis reflects the full amount requested by Mills:  work performed by RSK and LSL on 8/27/96 ($950.00); by RSK and LSL on 8/28/96 ($2,725.00); by LSL and RWM on 8/29/96 ($855.00); a general strategy meeting attended by RSK and GRM on 8/29/96 ($843.75)[4]; by RSK on 9/5/96 ($2,450.00); by RSK and RWM on 9/6/96 ($2,590.00); by RWM on 9/8/96 ($1,575.00); by RWM, RSK, and LSL on 9/11/96 ($3,052.50); by LSL on 9/13/96 ($562.50); RWM and RSK on 9/16/96 ($3,325.00); by RSK on 9/18/96 ($2,800.00); and by RSK on 9/23/96 ($2,625.00).

---

[4] The Court notes that these attorneys have recorded different times for attending the same meeting.  The time difference, however, is slight and is likely an accurate reflection of the attorneys' time as opposed to an error.

SUBTOTAL: $24,353.75

LESS 15%: $ 3,653.06

**SECTION 1b TOTAL:    $20,700.69**

C.  The following entries consist mainly of "general litigation" services, which the Court concludes are beyond the scope of the permitted fees, as defined by Judge Gottschall's Order: RSK's time for drafting the Complaint on 8/30/96 and 9/4/96; and RSK's time for discussing and revising the Complaint on 9/12/96.  The Court awards no fees for these services.

## 2. Forcing The Resumption Of Distributions

Although the Mills Firm has attempted to segregate its billing entries under each of the five permissible billings categories, it is apparent to the Court that this section includes fees associated not only with forcing the resumption of distributions, but other permitted fees as well, such as those stemming from services related to the impropriety of proxy voting.  The Court appreciates the difficulty in segregating fees in the manner attempted by Mills, and will award the fees as permitted by Judge Gottschall, regardless of the category in which they appear.  Nevertheless, Mills' descriptions of some tasks under this heading are vague, or improperly intermingle permitted and disallowed services within a single block of time. Once again, the Court reduces these requested fees by 15%, which the Court believes is a fair and reasonable reduction.

11

A.  The following entries and corresponding fees are fully recoverable:  work performed by RSK and AJL on 1/29/97 ($4,675.00); by RSK and AJL on 1/30/97 ($3,337.50); by RSK on 2/3/97 ($1,925.00); by RSK and AJL on 2/4/97 ($3,462.50); by RSK and DGH on 2/5/97 ($4,425.00); by AJL on 2/24, 25, and 26/97 ($4,050.00); by DGH and AJL on 2/27/97 ($1,843.75); by RSK on 3/17/97 ($1,400.00); by AJL on 3/19/97 ($1,250.00); by RWM and AJL on 3/20/97 ($2,482.50); by RWM on 3/21/97 ($420.00); by RSK, AJL, and RWM on 3/24/97 ($3,050.00); and by AJL on 3/27/97 ($500.00).

**SECTION 2a TOTAL: $32,821.25**

B.  The Court reduces the following fees by 15%: work performed by AJL on 1/28/97 ($2,000.00); by GRM on 1/30/97 ($1,187.50); by LSL, RSK, and DGH on 1/31/97 ($5,018.75); by LSL on 2/4/97 ($937.50); by RSK on 2/26/97 ($2,800.00); by RSK on 2/27/97 ($2,450.00); by RSK on 2/28/97 ($1,925.00); by AJL and RSK on 3/3/97 ($3,812.50); by RWM on 3/17/97 ($840.00); by RSK on 3/19/97 ($2,450.00); by RSK on 3/20/97 ($1,575.00); and by RWM and RSK on 7/9/97 ($455.00).

SUBTOTAL: $25,451.25

LESS 15%: $ 3,817.69

**Section 2b TOTAL: $21,633.56**

**3. Preventing the Advancement of Partnership Funds to General Partners**

Although the Court awards full fees for most of the entries in this section, the Court declines to grant fees for unsealing documents, motions for sanctions, and settlement. As such, the Court reduces by 15% entries that describe such services without identifying the time allocated to completing these tasks. The Court also reduces the requested fees for vague entries that do not enable the Court to properly determine whether the fees are within the scope of Judge Gottschall's Order.

A. The following services are fully compensable: work performed by LSL on 12/24 and 27/96 ($1562.50); by RSK on 12/31/96 ($1,150.00)[5]; by LSL on 12/31/96 ($875.00); by RSK and DGH on 1/10/97 ($631.25); by AJL on 2/17 and 18/97 ($4,250.00); by RSK on 2/19 and 20/97 ($1,400.00); by AJL and GRM on 3/4/97 ($2,483.75); by AJL and RSK on 3/5/97 ($4,275.00); by AJL and RSK on 3/6/97 ($3,500.00); by AJL on 3/7/97 ($2,000); by RSK on 3/10, 12 and 13/97 ($2,275.00); by AJL on 3/18/97 ($2,187.50); by AJL on 5/7/97 ($62.50); by RSK on 5/8, 9, and 12/97 ($3,500.00); by RSK and GRM on 5/13/97($1,597.50); by RSK on 6/9 and 12/97 ($4,900.00); by AJL and RSK on 6/13/97 ($3,925.00); by AJL on

_____

[5] This RSK entry properly segregates its tasks and corresponding time, enabling the Court to properly reduce the time to account for only permitted services. The Court declines to award fees for drafting the Reply to the Motion to Unseal.

6/14, 15, and 16/97 ($1,437.50); by RSK on 6/15/97 ($1,400.00);
by AJL and GRM on 12/3/97 ($322.50); by GRM and RSK on 12/4/97
($3,096.25); by RSK on 12/15/97 ($2,450.00); and by EWS on 12/19,
22, 23, 29, and 31/97 ($2,700.00).

**SECTION 3a TOTAL:    $51,981.25**

B.   The Court will reduce the following fees by 15%: work
performed by RWM, LSL, NAD, and GRM on 1/6/97 ($2,128.75); by RWM
on 1/9/97 ($840.00); by RSK on 3/4/97 ($2,100.00); by RSK on
3/11/97 ($2,100.00); by RSK ON 3/14/97 ($1,050.00); by RSK on
5/7/97 ($1,400.00); by AJL on 5/9/97 ($500.00); by AJL on 5/13/97
($687.50); by AJL on 6/9/97 ($250.00); by GRM on 12/2/97
($296.25); and by RWM on 12/4/97 ($1,050.00).

SUBTOTAL: $12,402.50

LESS 15%: $ 1,860.38

**SECTION 3b TOTAL: $10,542.12**

## 4.   The Impropriety of Proxy Voting

Once again, the Court awarded most fees in this section, but
reduces the award for entries that are comprised of both
permitted services and general litigation services, such as work
related to settlement, soliciting new offers, unsealing
documents, the Florida lawsuit, and searching for local counsel.[6]

---

[6] Defendants did not object to Futterman & Howard's entries
associated with the appointment of a special master, and the
Court presumes that, similarly, the Defendants would not object
to the Mills Firm's corresponding entries.

14

In addition, the Court reduces fees where the entry was so vague as to prevent the Court from determining whether the entire entry satisfied Judge Gottschall's criteria.

A. The Court awards full fees for the following entries: work performed by RSK on 10/7/96 ($350.00): by NAD, DGH, RSK, and GRM on 10/14/96 ($3,466.25); by RSK on 10/15/96 ($2,800); by RSK and SRR on 10/16/96 ($2,037.50); by RSK on 10/18/96 ($350.00); by RSK, SRR, and LSL on 11/5/96 ($943.75); by RSK, SRR, and LSL on 11/6/96 ($1,856.25); by RSK on 11/7 and 8/96 ($5,075.00); by RSK, and LSL on 11/11/96 ($3,487.50); by SRR on 11/18/96 ($562.50); by RSK on 11/22/96 ($2,275.00); by AJL on 11/14 and 15/97 ($750.00); by AJL and LSL on 11/16/97 ($1,625.00); by RSK on 1/21/97 ($1,925.00); by AJL on 1/21/97 ($625.00); by GRM on 1/22/97 ($691.25); by RSK, NAD, DGH, AJL, and SRR on 1/23/97 ($4,463.75); by AJL on 1/24/97 ($1,562.50); by GRM on 1/25/97 ($98.75); by AJL on 1/26/97 (500.00); by DGH on 2/10/97 ($656.25); by AJL on 2/14/97 ($2,125.00); by AJL on 12/6 and 8/97 ($625.00); by EWS on 12/9/97 ($975.00); by AJL and EWS on 12/10/97 ($1225.00); by RSK on 12/11/97 ($1,400); by EWS on 12/12/97 ($450.00); by RSK on 12/18/97 ($2,800.00); by AJL on 12/20/97 ($3,125.00); by RSK and AJL on 12/21/97 ($1,762.50); by AJL on 12/22/97 ($1,750.00); by RSK and AJL on 12/23/97 ($3,300.00); by RSK on 12/27/97 ($1,050.00); by RSK and AJL on 12/29/97 ($2,862.50); by RSK and EWS on 12/30/97 ($3,875.00); by RSK on 12/31/97 ($3,500.00); by

RSK and EWS on 1/2/98 ($3,250.00); by RSK and AJL on 1/3/98 ($1,550.00); by AJL and JBN on 1/5/98 ($188.75); by RSK on 1/6/98 ($2,275.00); by AJL on 1/22/98 ($187.50); by RSK on 2/4/98 ($2,450.00); by RSK and EWS on 2/5/98 ($2,000); by RWM and RSK on 2/6/98 ($2,380.00); by AJL and RSK on 2/8/98 ($1,200.00); by RSK on 2/17, 18, 19, 20 and 23/98 ($10,850.00); by RWM on 2/23/98 ($2,205.00); by RSK on 2/24/98 ($1,400.00); by RSK on 3/23/98 ($1,750.00); by AJL and RSK on 3/24/98 (2,162.50); by JBN and AJL on 3/25/98 ($480.00); by AJL and RSK on 3/26/98 ($1,812.50); by RSK on 8/11/98 ($2,100.00); by GRM, RSK, and AJL on 8/12/98 ($1,058.75); and by GRM and RSK on 8/13/98 ($2,997.50).

**SECTION 4a TOTAL:    $109,223.75**

B.   The Court will reduce the following entries by 15%: work performed by RSK on 10/3 and 4/96 ($5,250.00); by RWM on 10/16/96 ($735.00); by RWM on 11/6/96 ($420.00); by SRR on 11/7/96 ($1,237.50); by RSK and SRR on 11/19/96 ($3,643.75); by GRM on 1/16/97 ($493.75); by RWM on 1/17/97 ($630.00); by DGH on 1/21/97 ($93.75); by DGH on 1/24/97 ($1,312.50); by AJL on 12/5/97 ($125.00); by AJL on 12/9/97 ($2,000.00); by RSK on 12/10/97 ($2,800.00); by AJL on 12/11/97 ($125.00); by RSK on 12/13/97 ($2,100.00); by RWM on 12/18/97 ($2,835.00); by RSK on 12/19/97 ($2,800.00); by RSK on 12/22/97 ($2,800.00); by RSK on 1/5/98 ($2,800.00); by AJL on 1/6/98 ($125.00); by AJL on 2/2/98 ($125.00); by RSK and EWS on 2/9/98 ($2,987.50); by RWM and EWS

16

on 2/23/98 ($2,355.00); by RSK and EWS on 2/25/98 ($812.50); by

RSK on 3/27/98 ($700.00); by AJL on 8/13/98 ($437.50).

SUBTOTAL: $39,743.75

LESS 15%: $ 5,961.56

**SECTION 4b TOTAL:    $33,782.19**

## 5.  Rebuffing the Individual Plaintiffs' Efforts to Unseat the Named Plaintiffs as Class Representatives

Although Judge Gottschall awarded class counsel's fees for

rebuffing the Individual Plaintiffs' efforts to unseat the named

Plaintiffs as class representatives, Judge Gottschall stated that

these services were of debatable value to the class.  In

addition, the Court notes that Judge Gottschall granted the

Individual Plaintiffs' Motion to Intervene in this class action,

rendering class counsel's services in opposing the Motion to

Intervene of even less value to the class.  With that in mind,

the Court reduces the Mills Firm's fees for opposing the Motion

to Intervene by 15%.  Vague entries were similarly reduced.

A. The Court awards the full fee for the following services:

work performed by RSK on 9/17 and 18/97 ($2,800.00); by RMW and

RSK on 10/3/97 ($3,220.00); by RWM on 10/6/97 ($840.00); by RWM

and RSK on 10/8/97 ($2,240.00); by RWM and DGH on 10/13/97

($4,050.00); by AJL and RMW on 10/14/97 ($4,157.50); by AJL and

DGH on 10/15/97 ($250.00); by RWM on 10/16/97 ($420.00); by RWM

on 10/16, 20, 21, 22, 27, and 28/97 ($9,135.00); by AJL on

10/29/97 ($62.50); by DGH on 10/31/97 ($93.75); by RWM, RSK, and

17

AJL on 11/4/97 ($2,302.50); by RWM and DGH on 11/5/97

($7,560.00); by DGH on 11/6/97 ($5,250.00); by RWM, RSK, and AJL

on 11/7/97 ($832.50): by RSK on 11/10/97 ($2,800.00); by RWM,

RSK, and DGH on 11/11/97 ($3,733.75); by RWM and RSK on

($4,970.00); by RWM on 11/13/97 ($420.00); by RWM and RSK on

11/14/97 ($4,165.00); by RWM on 11/17 and 18/97 ($840); by RWM on

12/8/97 ($420.00); by EWS on 12/15 and 16/97 ($1012.50); by EWS

on 1/12, 14, and 15/98 ($1,875.00); by RSK and EWS on 1/20/98

($4,537.50); by EWS on 1/21/98 ($900.00); by RSK on 1/22/98

($3,850.00); by RSK and EWS on 1/23/98 ($3,275.00); by RSK and

EWS on 1/26/98 ($3,700.00); by RSK and EWS on 1/27/98

($2,412.50); by AJL, RSK, and EWS on 1/28/98 ($4,062.50); by AJL,

RSK, JBN, and EWS ON 1/29/98 ($4,535.00); by RSK and EWS on

1/30/98 ($3,250.00); by RSK on 3/30 and 31/98 ($4,600.00); by

RSK, RWM and AJL on 4/1/98 ($3,282.50); by RSK on 4/2/98

($1,750.00); by AJL on 4/4/98 ($62.50); by RSK, AJL, and EWS on

4/6/98 ($2,112.50); by RSK and AJL on 4/9/98 ($300.00); by RSK on

4/13/98 ($350.00); by EWS on 4/16/98 ($75.00); by RWM on 5/7/98

($840.00); by AJL on 10/13 and 14/98 ($1,437.50); by AJL on 10/15

and 22/98 ($500.00); by AJL on 10/28/98 ($750.00); by RSK on

12/10/98 ($1,400.00); by RWM on 12/11/98 ($420.00); by RWM on

12/13/98 ($1,050.00); by AJL and RSK on 12/17/98 ($4,987.50); by

JMM, AJL, DGH, and RSK on 12/18/98 ($6,790.00); by JMM, AJL, and

RSK on 12/19/98 ($5,335.00); by AJL and DGH on 12/20/98

($1,750.00); by AJL on 1/7 and 8/99 ($1,875.00); by RSK and AJL on 1/11/99 ($3,950.00); by RSK and RWM on 1/28/99 ($595.00); by RWM on 2/1 and 2/99 ($315.00); by AJL on 2/2/99 ($500.00); by RSK and AJL on 2/3/99 ($2,000.00); by AJL on 2/4, 5, and 8/99 ($1,937.50).

**SECTION 5a TOTAL: $142,937.50**

B. The Court reduces the following fees by 15%: work performed by RWM on 9/17/97 ($1,260.00); by RSK on 10/6/97 ($2,450.00); by DGH on 10/14 and 16/97 ($187.50); by EWS on 1/6,7, and 8/98 ($2,250.00); by RWM on 1/20/98 ($630.00); by RWM on 1/23/98 ($1,260.00); by RWM on 1/26/98 ($1,680.00); by RSK on 2/2/98 ($2,800.00); by AJL on 2/25/98 ($62.50); by AJL and RSK on 2/26/98 ($3,300.00); by AJL, RSK, and RWM on 2/27/98 ($3,702.50); by RSK on 3/2/98 ($2,800.00); by AJL and RSK on 3/3/98 ($2,862.50); by RSK on 3/4/98 ($5,250.00); by AJL and RSK on 3/6/98 ($2,925.00); by AJL, RSK, and JMM on 3/9/98 ($3,242.50); by RSK on 3/10 and 19/98 ($3,150.00); by RWM and RSK on 3/20/98 ($1,610.00); by RSK on 4/7/98 ($1,050.00); by RSK on 4/28/98 ($1,225.00); by AJL and RSK on 10/27/98 ($3,300.00); by RWM on 12/7/98 ($210.00); by RSK on 12/11/98 ($2,275.00); by AJL and RWM on 12/14/98 ($2,335.00); by AJL on 12/15/98 ($2,125.00); by RSK on 12/16/98 ($3,850.00); by RSK on 1/27/99 ($210.00); and by AJL on 1/29/99 ($62.50).

SUBTOTAL: $58,065.00

LESS 15%: $ 8,709.75

**SUBSECTION 5b TOTAL:    $49,355.25**

## 6. General Litigation Services

The Court interprets Judge Gottschall's Order as excluding general litigation services from the scope of recoverable fees. Nevertheless, the Court finds that at least a portion of the following entries represent recoverable services.[7] Therefore, the Court awards 85% of the following fees: work performed by RSK on 9/30/96 ($2,450.00); by LSL on 12/12/96 ($750.00); by AJL on 1/27/97 ($2,062.50); by RWM on 2/20/97 ($840.00); by AJL on 2/28/97 ($250.00); by AJL on 3/14, 16 and 17/97 ($4,125.00); by RSK on 3/18/97 ($1,225.00); by AJL on 3/23/97 ($125.00); by RSK on 3/27/97 ($1,575.00); by AJL on 6/18/97 ($687.50); and by AJL and RSK on 6/19/97 ($3,312.50).

SUBTOTAL: $17,402.50

LESS 15%: $ 2,610.38

**SECTION 6 TOTAL:    $14,792.12**

---

[7] For example, many of these entries describe services related to the Mills' Firms efforts to stop the advancement of funds to the general partners (12/12/96, AJL's 1/27/97, AJL's 3/17/97, RSK's 3/18/97).

**The Mills Firm, Recoverable Fees**

| | |
|---|---|
| Section 1a | $ 36,112.60 |
| Section 1b | $ 20,700.69 |
| Section 2a | $ 32,821.25 |
| Section 2b | $ 21,633.56 |
| Section 3a | $ 51,981.25 |
| Section 3b | $ 10,542.12 |
| Section 4a | $109,223.55 |
| Section 4b | $ 33,782.19 |
| Section 5a | $142,937.50 |
| Section 5b | $ 49,355.25 |
| Section 6 | $ 14,792.12 |
| **Total Recoverable Fees:** | **$523,882.08** |

**The Mills Firm, Recoverable Costs**

The portion of Mills' Application detailing its costs is presented in such a way that it is nearly impossible for the Court to properly review each item submitted to determine whether the cost arises from permitted services. Therefore, the Court awards costs by multiplying the requested costs by the percentage of fees actually recovered, as compared to the fees requested. Because the Court has awarded Mills 62% of the fees it requested, the Court similarly awards Mills 62% of the costs it requested.

Requested Costs: $119,952.84

Less 38%       $ 45,582.08

**Awarded Costs: $74,370.76**

**FUTTERMAN & HOWARD, CHTD.**

Unlike the Mills Firm's Application, Futterman & Howard's Application makes no attempt to segregate its services. Nevertheless, several entries identify the subject matter associated with the rendered services, i.e. "Create Legal Expenditure Spreadsheet.(Advancing Funds)," enabling the Court to make an informed decision as to whether the services are recoverable. Those entries that fail to identify the subject matter of the services are often times too vague to permit the Court to make this determination. The Court reduces those vague entries by 15%.

In addition, Futterman & Howard seeks to recover fees for services that the Court finds are beyond the scope of Judge Gottschall's Order, including fees stemming from class communications and for purely ministerial tasks, such as updating pleading books and indices. These fees, which represent a significant number of entries in Futterman's Application, are not recoverable under Judge Gottschall's Order. A closer call is Futterman & Howard's request for fees incurred in defending their position as lead counsel. Because these services are so closely related to rebuffing the Individual Plaintiffs' attempts to unseat the Named Plaintiffs as class representatives, the Court awards these fees.

Accordingly, the Court awards full fees for the following services: work performed by MIB on 2/18, 20, and 21/97 ($1,400.00); by MIB and RS on 2/24/97 ($433.00); by ED and MIB on 2/26/97 ($1,035); by RS on 3/10/97 ($165.00); by MIB and RS on 3/12/97 ($402.00); by MIB and RS on 3/13/97 ($191.00); by MIB and RFL on 3/20/97 ($1,156.00); by MIB on 3/21/97 ($245.00); by MIB and RLF on 3/24/97 ($508.00)[8]; by MIB and RLF on 3/25/97 ($1,114.00); by MIB and RLF on 3/26/97 ($1,414.00); by RS on 3/31/97 ($770.00); by RLF and RS on 4/1/97 ($638.00); by RLF and RS on 4/2/97 ($2,200.00); by RLF on 4/3/97 ($88.00); by RS on 4/9/97 ($275.00); by MIB on 4/11/97 ($630.00); by MIB and RS on 4/14/97 ($395.00); by MIB on 4/29/97 ($910.00); by MIB on 4/3097 ($210.00); by MIB on 5/13 and 14/97 ($980.00); by MIB on 5/21/97 ($1,435.00); by MIB on 6/16/97 ($1,190.00); by MIB on 6/24, 25, 26 and 27/97 ($2,065.00); by MG and MIB on 7/3/97 ($464.00); by RLF on 7/8/97 ($176.00); by MIB on 7/14, 21, and 22/97 ($1,680.00); by MIB on 8/6/97 ($140.00); by MIB and RS on 8/11/97 ($635.00); by MG, MIB, and RS on 9/8/97 ($149.00); by MIB on 9/9/97 ($245.00); by MG and MIB on 9/10/97 ($442.00); by MIB and RLF on 9/15/97 ($526.00); by MIB on 9/16, 17, 18, and 19/97 ($3,010.00); by RS on 10/2/97 ($22.00); by RLF on 10/3/97

---

[8] Futterman & Howard seek fewer hours for these services than initially requested, but fail to adjust the corresponding fee.  The Court reduces the fee in accordance with time reduction conceded by Futterman & Howard.

($836.00); by MIB on 10/6 and 7/97 ($2,205.00); by MIB and RS on 11/4/97 ($1,585.00); by MIB on 11/5 and 6/97 ($4,120.00); by RLF on 11/6/97 ($110.00); by MG on 11/13 and 17/97 ($242.00); by RS on 11/17/97 ($55.00); by RS on 11/21/97 ($22.00)[9]; by RS on 12/2/97 ($88.00); by MG, MIB, and RLF on 12/3/97 ($358.00); by MIB on 12/5/97 ($630.00); by MG and RS on 12/8/997 ($164.00); by MG on 12/9/97 ($11.00); by RLF on 12/22/97 ($132.00); by MIB, RLF, and RS on 12/23/97 ($2,694.00); by MIB on 12/31/97 ($805.00); by RLF on 1/5/98 ($440.00); by MIB on 1/6/98 ($980.00); by RS on 1/6/98 ($242.00); by RLF on 1/7/98 ($88.00); by RLF and RS on 1/8/98 ($275.00); by MG, RLF, and RS on 1/9/98 ($378.00); by MG on 1/13/98 ($33.00); by RLF on 1/14 and 15/98 ($440.00); by MIB and RLF on 1/16/98 ($290.00); by RLF on 1/19/98 ($176.00); by MIB and RLF on 1/28/98 ($1,384.00); by MIB on 1/29 and 30/98 ($1,715.00); by MG on 2/2/98 ($33.00); by MIB on 2/4/98 ($1,190.00); by RLF on 2/17 and 18/98 ($308.00); by MIB on 2/19 and 20/98 ($385.00); by RLF on 2/20 and 23/98 ($264.00); by RLF on 2/24/98 ($176.00); by MIB on 2/26 and 27/98 ($315.00); by MG and MIB on 3/2/98 ($302.00); by MIB on 3/4 and 23/98 ($1,295.00); by RLF on 3/23/98 ($660.00); by MG on 3/24/98 ($22.00); by MIB on 3/25 and 26/98 ($770.00); by MG, MIB, and RLF on 3/27/98 ($1,162.00); by MIB and RLF on 4/6/98 ($536.00); by RLF on 4/7/98

---

[9] The Court rejects Futterman's request for fees arising from RS's time "UPDAT[ING] PLDG BOOK (.2)" on 11/21/97.

($880.00); by MIB on 4/8/98 ($105.00); by RLF on 4/10/98
($88.00); by MIB on 4/13/98 ($35.00); by RLF on 4/28/98 ($44.00);
by RLF on 5/1 and 4/98 ($792.00); by RLF on 5/7 and 8/98
($616.00); by RLF on 8/10, 11, 12, and 17/98 ($1,430.00); by RLF
ON 8/19/98 ($132.00); by ($630.00); by RLF on 8/25/98 ($176.00);
by MG and MIB on 10/12/98 ($812.00); by MG on 10/13/98 ($209.00);
by RLF on 10/15 and 19/98 ($220.00); by MIB on 10/30/98
($945.00); by MIB on 11/3, 4, and 5/98 ($1,120.00); by RLF on
11/5/98 ($44.00); by RLF on 11/11/98 ($880.00); by RLF on 12/1,2,
and 3/98 ($3,212.00); by MIB on 12/7/98 ($35.00); by RLF on
12/7/98 ($176.00); by MIB and RLF on 12/8/98 ($211.00); by MIB
and RLF on 12/10/98 ($492.00); by RLF on 12/11/98 ($264.00); by
RLF on 12/17/98 ($176.00); by MIB on 12/18/98 ($280.00); by RLF
on 12/19, 20, and 21/98 ($1364.00); by RLF on 12/30/98 ($308.00);
by RLF 1/4 and 6/99 ($220.00); by RLF on 1/11/99 ($440.00); by
MIB on 1/12/99 ($350.00); by MIB on 1/15/99 ($175.00); and by RLF
on 1/21/99 ($1,100.00).

**SECTION A TOTAL: $73,215.00**

B.  The Court reduces the following fees by 15%: work
performed by RLF on 1/20 and 29/97 ($1,980.00); by RLF on 2/3/97
($484.00); by RS on 2/7/97 ($44.00); by MIB and RS on 2/12/97
($1,873.00); by MIB and RS on 2/13/97 ($1,888.00); by RS on
2/13/97 ($418.00); by MIB on 3/19/97 ($140.00); by MIB on 3/31/97
($315.00); by MIB on 4/4/97 ($315.00); by MIB on 4/7, 9, and

25

10/97 ($455.00); by RS on 4/21/97 ($550.00); by RLF on 4/23 and 25/97 ($1,056.00); MIB on 5/2/97 ($140.00); by RS on 5/20/97 ($55.00)[10]; by MIB on 5/22 and 30/97 ($455.00); by MIB and RLF on 6/4/97 ($587.00); by RLF on 6/6/97 ($88.00); by MIB on 6/16/97 ($1,190.00); by MIB on 6/19/97 ($770.00); by MIB on 6/20/97 ($595.00); by DE on 6/23 and 24/97 ($880.00); by RS on 7/3/97 ($198.00); by RLF on 7/9/97 ($924.00); by MIB on 9/23/97 ($1,155.00); by RS on 1/16/98 ($22.00)[11]; by RS on 1/19/98 ($66.00); by MIB on 1/20/98 ($2,345.00); by RLF on 2/25/98 ($1,254.00); by RLF on 3/2/98 ($2,376.00); by MIB on 3/3/98 ($980.00); by RLF on 3/3/98 ($132.00); by MIB on 4/7/98 ($35.00); by MIB on 7/7/98 ($70.00); by RLF on 8/4/98 ($308.00); by TAG on 8/10/98 ($110.00); by RLF on 8/18/98 ($132.00); by RLF on 8/19/98 ($132.00); by MIB on 8/20/98 ($630.00); by MG and RLF on 9/17/98 ($242.00); by RLF on 10/9/98 ($220.00); by MIB on 10/13/98 ($175.00); by RLF on 11/13/98 ($792.00); by MIB on 11/18, 19, and 20/98 ($3,465.00); by RLF on 11/20/98 ($176.00); by TAG on 12/8/98 ($22.00); by MIB and RLF on 12/16/98 ($1,658.00); by MIB on 1/7/99 ($210.00); by MIB on 1/25 and 26/99 ($735.00); by RLF on 1/26/99 ($264.00); by RLF on 1/27 and 28/99 ($3,212.00); by

---

[10] The Court awards no fees for RS's time updating a pleading book and index.

[11] The Court awards no fees for RS's time updating and refiling "PLDG DIST. VOL 7."

RLF on 1/29/99 ($1,716.00); by RLF on 2/16/99 ($176.00); by RLF
on 2/17/99 ($396.00); and by MIB on 3/10/99 ($700.00).

SECTION B SUBTOTAL: $39,306.00

LESS 15%: $ 5,895.90

**SECTION B TOTAL: $33,410.10**

The entries not listed in the subsections above were
considered to be beyond the scope of Judge Gottschall's Order
and, therefore, are not compensable.

**Futterman & Howard's Fees**

Section A Total                $ 73,215.00

Section B Total                $ 33,410.10

---

**Total Recoverable Fees:**              **$106,625.10**


**Futterman & Howard, Chtd., Recoverable Costs**

In its initial fee application, Futterman sought a total of
$440,000 in fees. The Court has awarded Futterman $106,625.10 in
fees, or 24% of the initial fee request. Assuming that an equal
percentage of its initial costs are recoverable, the Court awards
Futterman 24% of the $14,941.33 in requested costs.[12]

**Awarded Costs:       $3,585.92**

---

[12] The Court rejects Futterman's suggestion that it is
entitled to all of its court reporting costs, because the
services were for court hearing transcripts and not depositions.
Futterman has not demonstrated that the figure submitted for
court hearing transcripts is limited to court hearings that were
directly related to the permitted categories.

**LARRY D. DRURY**

The parties have represented to the Court that the
Partnerships have paid all compensation requested, as outlined in
Larry D. Drury's revised fee petition.


**IT IS THEREFORE ORDERED** that:

Class Counsel's Applications for Fees and Costs be, and the
same hereby are, **GRANTED IN PART, AND DENIED IN PART.**


DATED: November 8, 2001          Enter:

_____
ARLANDER KEYS
United States Magistrate Judge